IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Matthew Stephan McCormack, #51762, a/k/a Matthew Stephen McCormack, SCDC #178817,<br><br>    Plaintiff,<br><br>vs.<br><br>Ronaldo Myers, Director of Alvin S. Glenn Detention Center; NFN Harrell, Assistant Director; W. Refo, Captain; M. Higgins, Captain; NFN Burroughs, Lieutenant, NFN Jarvis, Officer and Librarian; NFN Salley, Officer, R. Hutchins, Officer; and A. Goldwire, Officer,<br><br>    Defendants. | Civil Action No. 6:06-2344-HFF-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

    This matter is before the court on the defendants' motion for summary judgment. In his complaint, the plaintiff, a state court prisoner proceeding *pro se,* alleges that he was denied his right to meaningful access to the courts as protected under the Fourteenth Amendment; he was denied his right to free exercise of religion as protected under the First Amendment, in that he was denied kosher meals; and that he was denied his constitutional right to a preliminary hearing.

    Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

## FACTS PRESENTED

The plaintiff was arrested on June 27, 2006, and booked into the Alvin S. Glenn Detention Center on charges of three counts of financial transaction card fraud, one count failure to pay money or information required, one count obtaining goods by false pretense, and one count receiving stolen goods (Harrell aff., ex. A). After the plaintiff was incarcerated within the detention center, he was charged with two additional criminal charges on July 10, 2006. The plaintiff was then charged with one count of impersonating a law enforcement officer and possession of contraband by a prisoner (Harrell aff., ex. A at pp. 2, 67-71). The grand jury issued true bill indictments against the plaintiff on September 14 and 15, 2006, and October 18 and 19, 2006 (def. m.s.j., ex. A pp. 1, 2, 6, 7, 11, 12, 14, 15, 21, 22, 27, 28, 31, and 32). The plaintiff pleaded guilty to the majority of the charges against him on December 7, 2006 (def. m.s.j., ex. A pp. 5, 10, 18, 25, 29, and 35). Pursuant to the plaintiff's guilty pleas, he was sentenced to four years concurrent, with credit for time served since June 27, 2006. The court docket shows that the plaintiff was transferred to Kirkland Reception and Evaluation Center in January 2007.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations,

a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

In his first claim, the plaintiff alleges that he was denied the right to a preliminary hearing in his underlying criminal case, which violated his constitutional rights. He claims that officers at the detention center failed to turn in his request for a detention

3

hearing. The defendants claim that the plaintiff has not met the requirements of *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the United States Supreme Court held that a state prisoner's claim for damages is not cognizable under Section 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated. 512 U.S. at 487. The plaintiff pleaded guilty to the majority of the charges for which he was being held at the detention center on December 7, 2006. Furthermore, he was then sentenced for a total of four years, to run concurrent, and was given credit for time served. *Id*. For this court to find that the plaintiff's constitutional rights were violated because he was not given a preliminary hearing would require a finding that the process under which the plaintiff was convicted was invalid and, therefore, that the plaintiff's conviction is invalid. Therefore, the plaintiff's claims are barred by the holding in *Heck* because the plaintiff has not shown that his conviction has been overturned.

In his next claim, the plaintiff alleges he was denied access to the courts due to alleged restrictions on his use of the detention center's law library. The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). In *Bounds*, the Supreme Court held that the right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library or by providing adequate assistance from persons trained in the law. *Id*. at 828. In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53. A claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

4

In the case of *Strickler v. Waters*, 989 F.2d 1375 (4th Cir. 1993), the Fourth Circuit addressed whether or not there exists a requirement on "local jails" to even provide a "law library." The court found that "'[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'" *Id.* at 1383 (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). The court continued and found:

> A local facility need not provide the same resources, much less the same quality or extent of resources, as must a state facility, because the expectation is that its occupants will be confined there only briefly and that they will have access to more extensive resources upon arrival at a state correctional facility.

*Strickler*, 989 F.2d at 1386. The Fourth Circuit Court of Appeals has ruled that the Constitution does not require that every local jail facility have a law library. *Magee v. Waters*, 810 F.2d 451, 452-53 (4th Cir. 1987).

Based upon the foregoing, the plaintiff's claim fails because he was represented by counsel during his incarceration at the detention center (Harrell aff., ex. A at p. 32; def. m.s.j., ex. A at pp. 5, 10, 18, 25, 29, 35), the detention center's law library does not contain the legal materials requested by the plaintiff (Jarvis aff. ¶¶ 9-13, ex. A) and the Fourth Circuit has held that local detention centers need not provide the same amount of resources to pretrial detainees as are provided to convicted inmates, and the plaintiff has failed to establish any actual injury that is attributable to the alleged denial of legal materials.

In his last claim, the plaintiff alleges that his right to free exercise of religion as protected under the First Amendment was violated during his incarceration at the detention center because he was denied kosher meals for a period of time. The plaintiff was arrested on June 27, 2006, and booked into the detention center on that same day

5

(Harrell aff., ex. A at p. 1). The plaintiff first requested kosher meals through an inmate grievance dated June 29, 2006 (Harrell aff., ex. A at p. 29). The defendants state that the plaintiff then began receiving kosher meals at the detention center on July 14, 2006 (Watson aff. ¶ 5, ex. A; *see also* Harrell aff. ¶¶ 5, 6). The plaintiff argues that he began receiving kosher meals sometime after September 11, 2006 (pl. resp. m.s.j. 1). He further alleges for the first time that the kosher meals served at the detention center do not comport with Jewish law.

Courts in the Fourth Circuit have examined some cases similar to the plaintiff's claims regarding receipt of religious based meals. The Fourth Circuit reviewed the issue of a kosher meal plan within the prison setting in *Cooper v. Lanham*, No. 97-7183, 1998 WL 230913 (4th Cir. 1998) (unpublished). In *Cooper*, the court was called to examine the question of whether a religion-specific diet was required within the detention setting. The court utilized the four-prong analysis from *Turner v. Safley*, 482 U.S. 78 (1987), to find that the Maryland Department of Corrections could refuse to provide religion-specific meals where the refusal was rationally related to a legitimate penological interest. *Cooper*, 1998 WL 230913 at **1-3 In *Doswell v. Smith*, 139 F.3d 888 (4th Cir. 1998), the Fourth Circuit again addressed restraints on the availability of kosher meals to inmates who claimed to be Jewish. In *Doswell*, the Fourth Circuit found that the religious exercise sought to be exercised by the prisoner must be sincerely held as a religious belief of the prisoner. *See id.* at **4-5.

In the instant case, viewing the facts in a light most favorable to the plaintiff, the plaintiff was not given kosher meals from June 27, 2006, until approximately September 11, 2006, or approximately two and a half months. The defendants contend that this delay was due, in part, to the plaintiff's religion being entered during the booking process as Catholic (Harrell aff., ex. A at p. 29; Refo aff. ¶¶ 10-17). According to defendant William S. Refo, a detention officer with the rank of Captain, when an inmate seeks to

6

change his religious affiliation in the detention center's system, proof is normally required so that the inmate does not constantly change his or her religious preference to reap the benefits of different religions. For instance, a kosher meal at the detention center costs approximately 10 times more than a regular inmate meal because of the particularized preparation involved with kosher meals. Also, kosher meals come prepackaged with a fork and knife, so they present a unique security concern for inmates in the special management unit, such as the plaintiff. Accordingly, requests for kosher meals by inmates in special management are viewed with some skepticism (Refo aff. ¶¶ 12-17). The plaintiff admits that he did begin receiving kosher meals at the detention center. As set forth above, he was moved from the detention center in January 2007. The plaintiff has failed to allege with any specificity exactly how the kosher meals are deficient. This court agrees with the defendants that the plaintiff has failed to establish a claim that rises to the level of a constitutional deprivation with regard to his temporary delay in obtaining kosher meals at the detention center.

The defendants further claim that they are entitled to qualified immunity. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609

(1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

May 18, 2007

Greenville, South Carolina